# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARLABS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RUSSELL and<br>PETRICHOR, INC.,<br><br>Defendants. | Civil Action No. 2:19-cv-18877<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Marlabs, Inc. ("Marlabs"), through its undersigned counsel, FordHarrison LLP, by way of Complaint against defendants Jonathan Russell and Petrichor, Inc. (collectively, "Defendants"), alleges and says:

## INTRODUCTION

1. Marlabs seeks to enforce the fair competition covenants of its May 3, 2018 Subcontractor Agreement and Confidentiality and Non-Compete Agreement (collectively, the "Agreements") with its former contractor Jonathan Russell ("Russell") and his company, Petrichor, Inc.

2. In partial consideration for their work with Marlabs, Defendants understood and agreed in writing they would not work for a Marlabs client for one year following the end of their work for Marlabs.

3. Instead of honoring their reasonable fair competition obligations to Marlabs, Defendants commenced working directly for a Marlabs client—Merck KGaA—though Marlabs introduced Defendants to Merck through the Agreements.

4. Working directly for Merck brazenly violates Defendants' contractual obligations owed to Marlabs.

5.      Marlabs, therefore, seeks redress for the harm it has suffered and to safeguard its continuing legal rights, and charges Defendants with breach of contract, among other claims, for which Marlabs seeks injunctive relief and compensatory and punitive damages.

## THE PARTIES, JURISDICTION, AND VENUE

6.      Marlabs is a Virginia corporation with its principal place of business at 1 Corporate Place South in Piscataway, New Jersey.

7.      Russell is an individual residing at 240 Candlestick Road in North Andover, Massachusetts.  He is a Principal with, and believed to be the sole employee of, Petrichor.

8.      Petrichor is believed to be a Delaware company with its principal place of business at 35 Manchester Road in Derry, New Hampshire.

9.      This Court has original jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

10.      This Court has personal jurisdiction over the parties because Marlabs is based in Piscataway, New Jersey, the Agreements were formed in New Jersey, the resulting injury caused by Defendants has affected and/or will continue to affect Marlabs in New Jersey, and the Agreements are governed by New Jersey law.

11.      Venue is proper because Marlabs is based in Middlesex County and the Agreements require any litigation thereunder be brought in the courts of New Jersey.

## FACTUAL BACKGROUND AS TO ALL COUNTS

**A.      Defendants' Responsibilities As A Subcontractor For Marlabs.**

12.      Marlabs is a digital technology solutions company which helps corporate clients across different industry verticals adopt digital technology solutions.

13.      On or about December 21, 2017, Marlabs secured a direct (or "prime") contract to provide software development work for Merck.

14.     Under the prime contract, Marlabs staffed portions of the engagement with subcontractors to perform work governed by individual work orders.

**B.     Defendants' Fair Competition Agreements With Marlabs.**

15.     Because Marlabs' competitive business advantage will be destroyed if its subcontractors (like Defendants) obtain work directly with Marlabs' clients (like Merck), Marlabs required Defendants execute and honor post-employment obligations contained in written contracts.

16.     As partial consideration of their work for Marlabs, Defendants executed the Subcontractor Agreement with Marlabs effective May 3, 2018, a true copy of which is attached as **Exhibit 1**.

17.     Under the fair competition provisions of the Subcontractor Agreement, Petrichor promised, for the duration of that Agreement and one year thereafter, not to enter employment with or render services to any Marlabs Client.  (Exh. 1 at p. 2, ¶5).   A Marlabs "Client" includes any entity for whom Marlabs or its contractors provide or seek to provide services under the Subcontractor Agreement. (*Id.*)

18.     Russell executed the Subcontractor Agreement on behalf of Petrichor on May 14, 2018.  (Exh. 1 at p. 5).

19.     The Subcontractor Agreement also contained a four-page "Confidentiality and Non-Compete Agreement" applicable to Russell, annexed to the Subcontractor Agreement as Exhibit B.  Paragraph 1 of Russell's Confidentiality and Non-Compete Agreement with Marlabs contained his identical promise, for the duration of that Agreement and one year thereafter, not to enter employment with or render services to any Marlabs Client.  (Exh. 1 at p. 7, ¶1).

20.     Russell executed the Confidentiality and Non-Compete Agreement on May 24, 2018.  (Exh. 1 at p. 9).

21.     Russell understood, read, and agreed to his obligations under the Confidentiality and Non-Compete Agreement.  (Exh. 1 at p. 9, ¶13).

22.     Defendants further understood and agreed if a reviewing court finds any provision of these covenants is unreasonable, the covenants shall be interpreted, limited, and enforced to the maximum extent, which the court deems reasonable. (*Id.* at p. 4, ¶13(3) and p. 9, ¶11).

**C.     Defendants Breached The Agreements By Joining Merck—A Marlabs Client.**

23.     Under the Agreements, Defendants performed services for Merck, Marlabs' Client, from May 29, 2018 to May 31, 2019.

24.     Accordingly, Defendants could not work directly for Merck until May 30, 2020 without violating the Agreements.

25.     On or about August 29, 2019, Marlabs learned Russell and/or Petrichor are working directly for Merck.

26.     Marlabs, through counsel, wrote to Defendants on September 3, 2019 to remind them of their post-employment restrictive covenants and demand they immediately cease-and-desist all conduct in violation of the Agreement.  A true copy of Marlabs' letter to Defendants (without enclosure) is attached as **Exhibit 2**.

27.     Despite receiving that letter, Defendants refused to end their work with Merck.

28.     Defendants were entrusted by Marlabs with performing services for Marlabs under the Agreements and could not have done so absent the limited restrictions of their fair competition covenants with Marlabs.

29.     Defendants know their work for Merck directly violates the Agreements by exploiting Marlabs' customer relationship with Merck.

30.     Defendants must be precluded from violating the Agreements and jeopardizing Marlabs' valuable customer relationships.

31.     Russell is well-educated and has broad-based skills which serve as the basis for other employment opportunities not prohibited by the Agreements.  Yet Russell refuses to seek employment not in violation of his obligations to Marlabs.

32.     Unless this Court restrains Defendants from continuing their work for Merck, Marlabs will suffer substantial and irreparable injury, including the loss of and/or damage to its goodwill with its customer relationships; and the loss of the basic protection created by the restrictive covenants applicable to Defendants.

33.     To the extent Marlabs cannot estimate with any certainty the nature and extent of its potential injures resulting from the wrongful conduct and breach of obligations by Russell, damages are irreparable and Marlabs has no adequate remedy at law.

## FIRST COUNT

### (*Breach of Contract*)

34.     Marlabs repeats the allegations in the above paragraphs as if fully set forth.

35.     Marlabs contracted with Defendants effective May 3, 2018.

36.     Defendants specifically acknowledged their obligations and restrictions in the Agreements, including those concerning fair competition.

37.     Defendants received valuable consideration when accepting the Agreements.

38.     Defendants breached their fair competition obligations under the Agreements.

39.     As a direct and proximate result of the breaches by Defendants, Marlabs has been and continues to be irreparably harmed in its business and property.

40.     The damages and injuries sustained by Marlabs or to be sustained by Marlabs cannot be adequately measured or compensated by money and, therefore, Marlabs is entitled to protection of its contractual and common law rights from the unlawful and damaging conduct of

Defendants. Unless Defendants are enjoined from engaging in wrongful conduct, Marlabs will continue to suffer irreparable harm for which it has no adequate remedy at law.

41.     By reason of the foregoing, Defendants are also liable to Marlabs for damages in an amount to be determined at trial.

**SECOND COUNT**

***(Breach of the Implied Covenant of Good Faith and Fair Dealing)***

42.     Marlabs repeats the allegations in the above paragraphs as if fully set forth.

43.     In every contract, there exists an implied covenant of good faith and fair dealing.

44.     Defendants are bound by the covenant of good faith and fair dealing implied by law in the Agreements.

45.     By their aforementioned conduct, Defendants have breached and continue to breach the covenant of good faith and fair dealing implied in the Agreements.

46.     As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Marlabs has been and continues to be irreparably harmed. Unless Defendants are enjoined from engaging in wrongful conduct, Marlabs will continue to suffer irreparable harm for which it has no adequate remedy at law.

47.     By reason of the foregoing, Defendants are also liable to Marlabs for damages in an amount to be determined at trial.

**WHEREFORE**, Marlabs, Inc. demands judgment in its favor and against Jonathan Russell and Petrichor, Inc.:

(1)     Enjoining Defendants through and including May 30, 2020, from working for Merck or its subsidiaries or affiliates Petrichor.

(2)     Enjoining Defendants through and including May 30, 2020, from providing or attempting to provide, directly or indirectly, any Services to any Marlabs Client (as those terms are defined in the Agreements).

(3)     Awarding compensatory damages to Marlabs (including, but not limited to, the recovery of the profits lost by Marlabs or gained by Defendants and business disruption costs).

(4)     Awarding attorneys' fees and costs to Marlabs;

(5)     Awarding interest and costs of suit to Marlabs; and

(6)     Awarding such other and further relief as the Court may deem just and proper.

FORDHARRISON LLP

By:   s/*Mark A. Saloman*
        Mark A. Saloman
        300 Connell Drive, Suite 4100
        Berkeley Heights, New Jersey 07922
        Phone: (973) 646-7300
        *Attorneys for Plaintiff*
        *Marlabs, Inc.*

Dated:  October 10, 2019

WSACTIVELLP:10874027.1

# EXHIBIT 1



**SUBCONTRACTOR AGREEMENT**

This SUBCONTRACTOR AGREEMENT (this "Agreement"), is made and entered into May 03, 2018("Effective Date") by and between **MARLABS, INC.,** ("MARLABS") located at: 1 Corporate Place South, Floor 3, Piscataway, NJ 08854, and **PETRICHOR, INC.** ("CONTRACTOR"),          located at 35 Manchester Rd, Derry, NH 03038 to          provide          computer consulting/development services (hereinafter "Services") for MARLABS, its clients, and/or its PARTNERS.

IN CONSIDERATION OF the promises and mutual agreements contained herein MARLABS and CONTRACTOR agree as follows:

1. **DURATION OF CONTRACT AND SERVICES**

    (1)  This Agreement will become effective on the date first shown above and will continue in effect unless and until terminated in writing as specified hereunder. Sections 4, 5, 6, 8, & 9 shall survive the termination of this Agreement.

    (2)  CONTRACTOR may not voluntarily terminate this Agreement and shall not remove/reassign the consultant until the completion of project as specified in applicable Work Order, and any renewals or extensions thereof ("End Date") unless, as stated in writing by MARLABS/Client, the project has been completed or the services are no longer required. If the employee/consultant provided by CONTRACTOR resigns from the employment of CONTRACTOR, CONTRACTOR shall give three (03) weeks prior written notice to MARLABS, and shall make best effort to provide a replacement within five (5) business days, so as to enable completion of project under the applicable Work Order. In the event of failure to provide three (03) weeks prior notice of termination, MARLABS shall be released from the obligation of payment for any/all outstanding invoice(s) not received by MARLABS from Client. MARLABS may terminate this Agreement and/or any Work Order, at any time, for convenience, upon one (1) week prior written notice to CONTRACTOR. Notwithstanding the above, MARLABS may terminate this Agreement and/or the services of CONTRACTOR immediately, if the Client terminates the Agreement with MARLABS; project has been completed and/or services are no longer needed.

2. **SERVICES TO BE PERFORMED**

    MARLABS shall specifically describe each assignment in applicable Work Order(s) and by accepting the Work Order, CONTRACTOR warrants and represents that CONTRACTOR'S consultant, named in the Work Order, will be able to begin and complete rendering services to MARLABS/client as indicated on the Work Order on the dates set forth therein. CONTRACTOR also represents that the skillset(s) and education/employment history of the resource assigned is true and accurate and that said resource shall clear all background check(s) that may be conducted and also complete the duration and the work assigned under the respective Work Order to the Client's satisfaction. If CONTRACTOR breaches this representation and warranty and fails to complete the duration and the work assigned under the respective Work Order to the Client's satisfaction, CONTRACTOR shall be liable to pay MARLABS an amount as decided by Court of law for the loss of business and goodwill, in addition to indemnifying MARLABS against any related claims from its clients.

3. **COMPENSATION**

    (1)  For services provided by CONTRACTOR under terms of this agreement, CONTRACTOR will be compensated on a time and material basis as set forth in the Work Order. CONTRACTOR will invoice MARLABS after the end of each calendar month, along with client approved time sheets and MARLABS will make payments, against undisputed invoice, in accordance with Work Order within thirty (30) days of the receipt of the undisputed invoice and approval by MARLABS. Invoices must be received by MARLABS within two (2) months from the last day of the month that the invoice is being raised for if not which, MARLABS shall not be obligated to either entertain or pay any invoices. MARLABS reserves the right to withhold payment against any invoice amount which MARLABS in good faith disputes which will be notified to CONTRACTOR and the parties will work together in good faith to promptly resolve the dispute.

    (2)  Notwithstanding the above, payment for services to CONTRACTOR will be based upon remittance of funds to MARLABS from the client covered by that Work Order. In case of non-payment by the client, MARLABS will have



no liability towards CONTRACTOR. At the request of and as a convenience to CONTRACTOR, MARLABS may deliver funds to it prior to receiving funds from the client and if MARLABS does not receive those funds from the client then Contractor must pay MARLABS an amount equal to any funds delivered by MARLABS to Contractor for which the client has not made payments to MARLABS. Such repayments shall be due immediately upon written demand mailed to Contractor.

**(3)** Invoices to: **Marlabs, Inc.** - PO Box 519, Piscataway, NJ 08854
Email: **payables@marlabs.com**

## 4.   CONFIDENTIALITY

CONTRACTOR agrees that he/she/it will not disclose to any third party, without the prior written consent of MARLABS, its PARTNERS or clients, any information relating to the business of MARLABS, its PARTNERS, clients, their customers or clients, contractors or employees, if such information could reasonably be construed as confidential. The parties agree to execute a Mutual Non-Disclosure Agreement which shall be provided by MARLABS and it shall constitute a part of this Agreement. In addition, CONTRACTOR shall not attempt to take advantage of an opportunity to provide Services about which CONTRACTOR or consultant has received information through MARLABS.

## 5.   NON-COMPETE

During the terms of this Agreement and for a period of one (1) year after the date of termination, CONTRACTOR shall not provide or attempt to provide (or advise others of the opportunity to provide), directly or indirectly, any Services to the Client introduced by MARLABS. For the purposes of this Agreement, "Client" includes any entity for whom MARLABS and/or CONTRACTOR provides or seeks to provide Services consequent to this Agreement, and any other entity that MARLABS introduces CONTRACTOR to in an effort to provide services under this agreement. Further, where MARLABS is subcontracting work from another contractor, client also includes the end client, and any and all intermediary entities in between.

## 6.   INSURANCE

CONTRACTOR will maintain the following insurance to cover CONTRACTOR's engagement under this Agreement for the complete duration of Consultant's assignment: (1) Comprehensive General Liability insurance coverage for not less than $1,000,000, (2) Worker's Compensation Insurance providing coverage pursuant to statutory requirements (3) Error and Omissions coverage for not less than $1,000,000, and (4) an employee dishonesty insurance of not less than $1,000,000. MARLABS must be named as an Additional Insured, and CONTRACTOR must provide MARLABS with a copy of the Certificate of Insurance within one week of project start. In the event Client requires additional insurance other than the covers stated above, CONTRACTOR shall provide all such additional covers. CONTRACTOR acknowledges its obligation to obtain appropriate insurance coverage for the benefit of its personnel. CONTRACTOR waives any rights to recovery from MARLABS for any injuries that affect personnel while performing Services under this Agreement and that are result of the negligence of CONTRACTOR or MARLABS employees. In the event CONTRACTOR fails to provide the requested insurance within three (03) business days from the execution of this Agreement, the parties herein mutually agree that MARLABS shall reserve the right to hold the payment without any prior notice till the CONTRACTOR provide the requested Certificate of Insurance. Notwithstanding anything to the contrary elsewhere in this Agreement, If Certificate of Insurance are not received within two (02) weeks, MARLABS shall on its own without any prior consent from CONTRACTOR obtain the required Certificate of Insurance on behalf of CONTRACTOR. CONTRACTOR agrees and accepts that MARLABS shall deduct the insurance cost from CONTRACTOR's invoice.

## 7.   INDEMNIFICATION

CONTRACTOR agrees to indemnify and hold harmless MARLABS, its partners, clients and their clients (up to and including the end clients) and customers, for any and all loss, costs and other liability incurred or threatened, whether direct, indirect or consequential as the case may be, including attorneys' fees, related to violations of CONTRACTOR's obligations set forth in this Agreement. CONTRACTOR agrees to indemnify and hold MARLABS harmless from all claims, expenses, fees including attorneys' fees, costs, the judgments that may be asserted against MARLABS that result from



acts or omissions of CONTRACTOR, including but not limited to claims of non-compliance with the applicable laws, rules and regulations of any and all federal or state employment, tax or other authorities, employee related claims, unpaid wages and/or joint employer liability. MARLABS's maximum aggregate liability to CONTRACTOR for any direct and proven damages, if any, shall not exceed the six months fees owed by MARLABS to CONTRACTOR, for the undisputed Services performed by CONTRACTOR under the relevant work order(s) under this Agreement that gave rise to the claim. Notwithstanding anything to the contrary elsewhere in this Agreement, MARLABS shall not be liable for any indirect, incidental, special, or consequential damages in connection with this Agreement.

8.  **LEGAL STATUS**

    (1) CONTRACTOR represents and warrants that any consultant that CONTRACTOR presents/assigns to MARLABS under this Agreement is legally eligible and permitted under US immigration and labor laws, to provide such Services within the United States. The parties to this Agreement agree that the relationship created by this Agreement is that of principal-principal and is not an employer-employee relationship.

    (2) All personnel introduced/assigned to render Services under this Agreement shall be direct and exclusive employees of CONTRACTOR, with CONTRACTOR being solely responsible for their performance management, discipline, and termination. Neither CONTRACTOR nor its resources assigned, shall be eligible to participate in any employee benefit/fringe benefit/insurance plan(s)/program(s) of any kind maintained by MARLABS in connection with services under the Agreement. CONTRACTOR represents & agrees that the consultant assigned will not be terminated from his employment with CONTRACTOR during his assignment with MARLABS.

    (3) CONTRACTOR guarantees that there are no other layers/companies in-between CONTRACTOR and its employees assigned under this Agreement. Hence, the employee as identified in the Work Order shall be W2 employee of CONTRACTOR. In case of breach of clause 8 by CONTRACTOR/not follow through on their obligations elsewhere under the Agreement/not pay the consultant on a timely manner, MARLABS can hire the resource provided by CONTRACTOR under this Agreement without any hiring or referral fees or re-assign the work order to another contractor, with CONTRACTOR being responsible to MARLABS for any costs/charges incurred in this regard. CONTRACTOR shall be solely responsible for payment of all federal, state and local taxes and contributions imposed/required under unemployment insurance, social security and income tax laws with respect to Services performed under the Agreement.

9.  **OWNERSHIP OF INTELLECTUAL PROPERTY**

    CONTRACTOR agrees that, pursuant to MARLABS' requirement that, all material created in whole or part by him/her/it in the course of or related to providing any services to MARLABS, or clients, shall be treated as if it were "work for hire" for MARLABS and/or clients as required. All ownership and control of the above materials and creations, including any copyright, patent rights and all other intellectual property rights therein ("Work"), shall vest exclusively with MARLABS, or clients, as decided by MARLABS, and he/she/it hereby assigns to MARLABS, or clients, as required, all rights, title and interest that he/she/it may have in such materials. CONTRACTOR hereby irrevocably assigns to MARLABS and/or its client, all royalty-free, perpetual and assignable licenses as may be necessary for it to use, sell, reproduce, modify and otherwise exercise control over Work rendered hereunder and/or any pre-existing intellectual property owned by CONTRACTOR and used or incorporated as part of Work, for any purpose whatsoever, by any and all means, method, processes, now known or hereafter developed. Notwithstanding anything to the contrary, any such intellectual property right exercised towards Work by the CONTRACTOR, shall be subordinate to rights of client(s). Each party owns, and will continue to own all rights, title and interests in and to any inventions however embodied, know how, works in any media, software, information, trade secrets, materials, property or proprietary interest that it owned prior to this Agreement, or that it created or acquired independently of its obligations pursuant to this Agreement.

10. **DATA PROTECTION.**

    In performing its obligations under this Agreement, MARLABS and CONTRACTOR will each comply with all applicable data privacy legislation. Without limitation to this, CONTRACTOR shall ensure that any disclosure of personal data, whether in relation to MARLABS's employees or otherwise, made to CONTRACTOR by MARLABS or on its behalf is made with the data subject's consent or is otherwise lawful.  In so far as any disclosure relates to CONTRACTOR's own



employee or subcontractor, CONTRACTOR shall notify that employee or subcontractor that MARLABS and its affiliates may: (a) use the personal data to provide Client with the Services, (b) disclose the personal data to third parties to provide the Services; and (c) inform Client about other products or services that MARLABS believes may be of interest.

## 11. AUDIT RIGHTS.

CONTRACTOR shall maintain complete and accurate records (the "CONTRACTOR Records") relating to the Temporary Services contemplated under this Agreement during the term of the Agreement and for five (5) years thereafter. Upon ten (10) days prior written notice to CONTRACTOR, MARLABS may conduct audits of CONTRACTOR Records to ensure CONTRACTOR's compliance with the terms of this Agreement. Upon receipt of such notice from MARLABS, CONTRACTOR shall provide MARLABS, or a third party engaged by MARLABS, with reasonable access to CONTRACTOR Records and CONTRACTOR facilities to review CONTRACTOR's compliance with the terms of this Agreement. If any audit reveals CONTRACTOR has overcharged MARLABS, CONTRACTOR will immediately refund such overcharge (the "Overcharge") to MARLABS. If such audit reveals the Overcharge is greater than two percent (2%), CONTRACTOR shall refund to MARLABS any such Overcharge and shall reimburse MARLABS for all reasonable costs associated with such audit, including, but not limited to, the engagement of a third party to conduct such audit.

## 12. ANTI-CORRUPTION POLICY

MARLABS conducts itself according to the highest standards of ethical conduct and comply with Anti-Corruption Policy ("Policy") that outlines our requirements and prohibitions applicable to our operations under the anti-corruption laws, including but not limited to, the U.S. Foreign Corrupt Practices Act of 1977 ("FCPA").CONTRACTOR shall comply with all applicable laws and regulations that apply from time to time to the Services under this Agreement, including, but not limited to, the U.S. Foreign Corrupt Practices Act ("FCPA") and all U.S. and international anti-bribery laws.

## 13. MISCELLANEOUS

(1) **Incorporation of Prime Contract**: Notwithstanding anything to the contrary elsewhere in this Agreement, in the event of any conflict between the provisions of this Agreement and the Prime Contract (the contract MARLABS entered with its client to which the Consultant will be assigned), the provisions of the Prime Contract shall govern and control.

(2) **Entire Agreement**: This Agreement supersedes all previous communications and understandings, oral or written, regarding the subject matter contained in this Agreement. No modification or deletion of any of the provisions of this Agreement shall be binding on either party unless reduced to writing and signed by both parties, and stating expressly that it constitutes a modification of this Agreement.

(3) **Severability**: Each provision in this Agreement shall be considered severable, and if any provision of Agreement is adjudged by any court to be void or unenforceable in whole or in part, this adjudication shall not affect the validity of the remainder of the Agreement.

(4) **Assignment**: CONTRACTOR shall not assign its rights and obligations under this Agreement without prior written consent of MARLABS. In the event of any permitted assignment, assignee shall assume all rights and obligations of assignor under this Agreement.

(5) **Governing Law**: This Agreement shall be governed by the laws of the State of New Jersey regardless of where the work is performed; any litigation may be brought only courts of New Jersey.

(6) **Volume Rebate**:

    a. Volume Rebate. CONTRACTOR agrees to provide MARLABS with a volume rebate (the "Volume Rebate") based on MARLABS's Annual Spend (as defined below) with CONTRACTOR each calendar year (the "Volume Rebate Period"). "Annual Spend" is defined as the aggregate amount of payments, remitted by MARLABS to



CONTRACTOR during the Volume Rebate Period. The amount of the Volume Rebate will be based on the applicable Volume Rebate percentage as outlined herein below.

| Annual Spend | Volume Rebate Percentage |
|---|---|
| $1,000,000 + | 1.00% |

b.  Payment of Volume Rebate. Within thirty (30) days following the end of each calendar year, MARLABS shall provide CONTRACTOR with written notice (the "Notice") of MARLABS's Annual Spend with CONTRACTOR during the Volume Rebate Period. MARLABS's Notice to CONTRACTOR is presumed to be accurate and fully payable unless disputed by CONTRACTOR within five (5) business days of CONTRACTOR's receipt of Notice. MARLABS, at its option, may (a) require CONTRACTOR to remit the Volume Rebate to MARLABS within thirty (30) days of CONTRACTOR's receipt of notice from MARLABS or; (b) deduct the amount of the Volume Rebate from CONTRACTOR's invoiced amounts.

(7)  **Background Check & Drug Test**: Any/all cost of the background checks and drug test, conducted by MARLABS at the direction of Client, shall be deducted from the payable amount to CONTRACTOR.

For MARLABS, INC.                                    For PETRICHOR, INC.

Signature:  *Partha Sarathy*                         Signature:  *Jon Russell*
            Partha Sarathy (May 16, 2018)

Print Name:  Partha Sarathy                          Print Name:  Jon Russell

Title        Associate General Counsel               Title        Principal

Date:        May 16, 2018                             Date:        May 14, 2018



**WORK ORDER**

**EXHIBIT - A**

Description of Consulting Services to be provided PETRICHOR, INC., ("CONTRACTOR") in accordance with Subcontractor Agreement dated: May 03, 2018 and by and between CONTRACTOR and MARLABS, INC., ("MARLABS").

| | |
|---|---|
| Contractor shall provide following services to Client: | Merck KGaA |
| Name of the Consultant: | Jonathan Russell |
| Project Description: | Program Manager |
| Project Location: | 400 Summit Drive, Burlington, MA 01803 |
| Project Start Date: | 05/29/2018 |
| Project Duration/ End Date (estimated): | 12/31/2018 |
| Billing Rate: | $ 105/Hr. till 11/28/2018 |
| | $ 115/Hr. w.e.f. 11/29/2018 |
| Per Diem and other Expenses | NA |
| Additional Terms & Conditions: | • The terms of the prime contract, the GMSA dated December 21, 2017 between Marlabs and Merck shall govern over this Work Order. Marlabs hereby assumes towards the CONTRACTOR all the obligations, rights, duties and redress that the Merck under the prime contract assumes toward the Marlabs. |

For **MARLABS, INC.**

Signature: _____

Print Name: Sanjay Vidyadharan, Esq.

Title: Chief Legal Officer

Date: 06/14/2018

For **PETRICHOR, INC.**

Signature: Jonathan Russell _Digitally signed by Jonathan Russell Date: 2018.05.22 12:17:44 -04'01'_

Print Name: Jonathan Russell

Title: Principal

Date: 5/22/2018



## CONFIDENTIALITY AND NON-COMPETE AGREEMENT

### EXHIBIT - B

In accordance with Subcontractor Agreement dated: May 03, 2018 ("Agreement") executed between **PETRICHOR, INC.** (hereinafter referred to as "CONTRACTOR") and **MARLABS, INC.,** (hereinafter referred to as **"MARLABS"**) under which CONTRACTOR has agreed to provide its technical services personnel on a case-by-case basis to perform services for MARLABS' clients **("Clients")**, this Exhibit -B applies to employee JONATHAN RUSSELL hereinafter referred to as "Contractor Employee" or "Employee"), with **SSN** 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 who agrees as follows in consideration for CONTRACTOR'S providing information to Employee and an opportunity to provide services to Client or CONTRACTOR'S introduction of Employee to Client for an interview about the opportunity to provide services.

1. **NON-COMPETITION AND NON-SOLICITATION:** For one year from the last day of services provided, if services are provided to client(s) introduced under the Agreement as set forth above, or else for one year from the date of introduction, Contractor Employee shall not provide or attempt to provide (or advise others of the opportunity to provide), directly or indirectly, any services to the client introduced by MARLABS. For the purposes of this Agreement, "Client" includes any entity for whom MARLABS and/or Contractor Employee provides or seeks to provide services consequent to this Agreement, and any other entity that MARLABS introduces Contractor Employee to in an effort to provide services under the Agreement. Further, where MARLABS is subcontracting work from another contractor, client also includes the end client, and any and all intermediary entities in between. Without specific written consent from an authorized officer of MARLABS, Contractor Employee shall not provide or attempt to provide services or such other contractor or consultant in any capacity whatsoever or undertake any assignment by or for a client, or any other entity, if such an act could be construed upon as an assignment obtained due to or influenced by this Agreement. If this covenant is breached, Contractor Employee agrees that MARLABS is eligible for injunctive relief against such conduct by Contractor Employee, and further that the Contractor Employee will be liable to pay MARLABS an amount assessed by MARLABS to make up for the damages caused to it by such action of the Contractor Employee.

2. **REPRESENTATIONS:** Contractor Employee acknowledges that information provided by him/her (including, but not limited to, skill-sets, education/employment history, resume, interview, references, etc.) in consideration for providing services to or on behalf of the Client is true and accurate, and that he/she is not restricted by any employment or other agreement from providing services to MARLABS' Client(s) and shall clear all background check(s) that may be conducted and understands that any misstatements or lack of candor by Contractor Employee of his/her qualifications or availability may be grounds for immediate termination of services with damages being sought by MARLABS or by the Client(s).

   By accepting a project, Contractor Employee warrants and represents that Contractor Employee will begin and complete rendering services to Marlabs client as indicated on the Work Order on the dates set forth therein. Contractor Employee understands that MARLABS is relying on this representation in its dealing with its clients, and therefore, if Contractor Employee breaches this representation and warranty, CONTRACTOR shall be liable to pay MARLABS an amount as decided by court of law for loss of business and goodwill, in addition to indemnifying MARLABS against any related claims from its clients.

3. **NONDISCLOSURE OF CONFIDENTIAL INFORMATION:** Contractor Employee will not disclose to any third party, without the prior written consent of MARLABS or Client, any information relating to the business of MARLABS, the Client, the customers and clients of the Client, or other vendors, suppliers, or employees, if such information could reasonably be construed as confidential and was obtained in the course of Contractor Employee providing services to Client, interviewing with MARLABS or Client(s), or contracting with MARLABS. For the purpose of this paragraph, Confidential information includes, but is not limited to, the identity, prior requirements, and present or future particular needs, of MARLABS or MARLABS' Clients(s), the identity of and background information about management personnel of MARLABS' Clients(s); information regarding the existence of and details about any openings for which a candidate may be proposed or interviewed or has learned about through such interviews, the identification of MARLABS' Client(s) in regard to openings; profit margins, pricing policies and practices, in general and as to particular Client(s); sales and marketing techniques, history, data forecasts and material, in general and as to particular Client(s); development plans, personnel training techniques and materials; information which relates to MARLABS or MARLABS' Clients' actual or anticipated products, software, research inventions, processes, techniques, designs or other technical data; and any other proprietary information belonging to MARLABS or MARLABS' Clients. Contractor



Employee further agrees he/she will not reproduce in any way, divulge, or remove from the premises of MARLABS, any Client, or the customers and clients of any Client, at any time during the interview, or during or after providing services, any tangible or intangible property whatsoever (except personal effects) which could reasonably be construed as constituting confidential information of MARLABS, the Client, or the customers or clients of the Client. Contractor Employee also will not disclose to any MARLABS' Employee, contractor, Client, customer or client of the Client his/her rate of compensation.

4.  **LEGAL STATUS:** Contractor Employee confirms that he/she is a direct and exclusive employee of CONTRACTOR. Although Marlabs and/or its Client may remove Contractor Employee from rendering Services hereunder at any time during assignment(s), Contractor Employee agrees that he/she shall remain subject to the sole and direct supervision and control of CONTRACTOR at all times in performance of the Services under the relevant Work Order(s)/Agreement, with CONTRACTOR being solely responsible for such Contractor Employee performance management, discipline, and termination of employment. Further, Contractor Employee shall be liable to MARLABS for any consequent damages (including loss of business or goodwill) suffered by MARLABS as a result of breach or misrepresentation to this clause.

    Contractor Employee acknowledges that CONTRACTOR shall be entirely and solely responsible for payment of wages, salaries, bonus, statutory contributions. and any other amount which shall/may be due to such Contractor Employee. CONTRACTOR is required to make any payment(s) due to Contractor Employee in a timely and non-discriminatory manner and as per immigration and labor law requirements. MARLABS has a principal-principal relationship with CONTRACTOR and thus shall not have any joint employer obligations and responsibility towards Contractor Employee at any point during the assignment(s). Contractor Employee agrees and acknowledges that if MARLABS finds that the CONTRACTOR has not fulfilled any such obligations to its personnel then it will have the right to take any action deemed appropriate, which may include termination of this Agreement without notice.

5.  **BENEFITS:** Contractor Employee hereby confirms of being advised by CONTRACTOR and agrees that neither CONTRACTOR nor any of its personnel is an employee of MARLABS or the Client or is entitled to any benefits provided or rights guaranteed by Vendor or the Client, or by operation of law, to their respective employees, including but not limited to group insurance, liability insurance, disability insurance, paid vacations, sick leave or other leave, retirement plans, health plans, premium "overtime" pay, and the like. Furthermore, Contractor Employee hereby waives any claim to the same to above-mentioned benefits or rights to the full extent permitted by law, even if it should be determined that he/she is an employee of MARLABS or Client for any purpose. It is understood and agreed that since the Contractor Employee is an employee of Contractor, MARLABS will make no deductions from fees paid to Contractor for any federal or state taxes or FICA relating to Contractor Employee, and MARLABS and the Client shall have no obligation to provide Worker's Compensation coverage for Contractor Employee or to make any premium "overtime" payments. It is agreed that it is the Contractor's responsibility to provide Worker's Compensation and, if applicable, pay any premium "overtime" rate, for its employees who work on the project covered by this Agreement and to make required FICA, FUTA, income tax withholding or other payments related to such employees, (and to provide MARLABS with suitable evidence of the same whenever requested). In the event of any claims brought or threatened by any party against MARLABS or the Client relating to the status, acts or omissions of Contractor or  Contractor Employee, Contractor Employee agrees to cooperate in all reasonable respects, including to support the assertions of employment status made in this Agreement.

6.  **SURVIVAL OF CERTAIN PROVISIONS:** The provisions in paragraphs 1, 3, 4 and 6 shall survive the termination of this Agreement of Supplier's Employee.

7.  **OWNERSHIP OF INTELLECTUAL PROPERTY, ETC:** Contractor Employee agrees that, pursuant to the Client's requirement that, (a) all documents, deliverables, software, systems designs, disks, tapes and any other materials (collectively. "materials") created in whole or in part by Contractor Employee in the course of or related to providing services to the Client shall be treated as if it were "work for hire" for the client, and (b) Contractor Employee will immediately disclose to MARLABS and the Client all discoveries, inventions, enhancements, improvements and similar creations (collectively, "creations") made, in whole or in part, by Contractor Employee in the course of or related to providing services to the Client. All ownership and control of the above materials and creations, including  any copyright, patent rights and all other intellectual property rights therein ("Work"), shall rest exclusively with MARLABS and/or the Client, and Contractor Employee hereby irrevocably assigns to MARLABS and/or the Client as the case may be, all right, title and interest that Contractor Employee may have in such materials and creations to the Client, without any additional compensation and free of all liens and encumbrances of any type. Contractor Employee affirms that the compensation it has negotiated for the services performed under this Agreement includes payment for



assigning such rights to the Client. Contractor Employee agrees to execute any documents required by the Client to register its rights and to implement the provisions herein. To the extent necessary to vest such exclusive ownership in MARLABS or its Client as agreed under such Prime Contract or as required under common law, Contractor Employee hereby irrevocably assigns to MARLABS and/or its Client, all royalty-free, perpetual and assignable licenses as may be necessary for it to use, sell, reproduce, modify and otherwise exercise control over Work rendered hereunder and/or any pre-existing intellectual property owned by CONTRACTOR and used or incorporated as part of Work, for any purpose whatsoever, by any and all means, method, processes, now known or hereafter developed. Notwithstanding anything to the contrary, any such intellectual property right exercised towards Work by the Contractor Employee, shall be subordinate to rights of Client(s).

8.  **DATA PROTECTION:** In performing its obligations under the Agreement, Contractor Employee and CONTRACTOR will each comply with all applicable data privacy legislation. Without limitation to this, Contractor Employee shall ensure that any disclosure of personal data, whether in relation to MARLABS's employees or otherwise, made to Contractor Employee by MARLABS or on its behalf is made with the data subject's consent or is otherwise lawful.  In so far as any disclosure relates to Contractor employee, CONTRACTOR shall notify that employee that MARLABS and its affiliates may: (a) use the personal data to provide Client with the Services; and (b) disclose the personal data to third parties to provide the Services.

9.  **ANTI-CORRUPTION POLICY:** Marlabs conducts itself according to the highest standards of ethical conduct and comply with Anti-Corruption Policy ("Policy") that outlines our requirements and prohibitions applicable to our operations under the anti-corruption laws, including but not limited to, the U.S. Foreign Corrupt Practices Act of 1977 ("FCPA"). Contractor Employee shall comply with all applicable laws and regulations that apply from time to time to the Services under the Agreement, including, but not limited to, the U.S. Foreign Corrupt Practices Act ("FCPA") and all U.S. and international anti-bribery laws.

10. **INDEMNIFICATION:** Contractor Employee agrees to indemnify and hold harmless MARLABS for any and all loss, costs and other liability incurred or threatened, including attorney's fees, related to violations of the obligations set forth in this Agreement by Contractor's Employee; including but not limited to violation of law/statute, intellectual property infringement, employee related claims, unpaid wages and/or joint employer liability.

11. **SEVERABILITY:** If any term or provision of this Confidentiality And Non-Compete Agreement shall be found by a court of competent jurisdiction to be illegal or otherwise unenforceable, the same shall not invalidate the whole of this Confidentiality And Non-Compete Agreement, but such term or provision shall be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable, and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent and agreements of the parties set forth herein.

12. **LAW:** This Confidentiality and Non-Compete Agreement shall be governed by the internal laws of the state of New Jersey without regard to its conflict of law rules, regardless of where the work is performed. Employee agrees to the exercise of personal jurisdiction over him/her by the courts in the state of New Jersey to the full extent permitted by law.

13. **ACKNOWLEDGEMENT:** As an Employee of the Contractor who will work on this project, I have been informed by CONTRACTOR of, and understand, read and agree to, my obligations hereunder.

Contractor Employee Signature: Jonathan Russell Digitally signed by Jonathan Russell Date: 2018.05.25 07:01:49 -04'00'

Contractor Employee Name: Jonathan Russell

Residential Address: 240 Candlestick Rd

North Andover, MA 01845

Emergency Contact Number: 781-760-1646

Date: 5/24/2018



**This Confidentiality and Non-Compete Agreement (Exhibit B) has been witnessed and endorsed as follows:**

I hereby affirm and acknowledge that this Exhibit B has been signed by our employee. Also, such employee has had an opportunity to understand and review it and accepts his/her waiver of any entitlement to compensation, insurance and/or benefits from MARLABS.

Contractor Authorized Representative Signature: _Jonathan Russell_ Digitally signed by Jonathan Russell
Date: 2018.05.25 07:01:20 -04'00'

Contractor Authorized Representative Name _Jonathan Russell_

Contractor Representative Title _Principal_

Date _5/24/2018_

# EXHIBIT 2



Ius Laboris USA Global HR Lawyers

300 Connell Drive  |  Suite 4100
Berkeley Heights, New Jersey  07922
Tel 973-646-7300  |  Fax 973-646-7301

Writer's Direct Contact:

MARK A. SALOMAN
973-646-7305
msaloman@fordharrison.com

September 3, 2019

**BY EMAIL & OVERNIGHT DELIVERY**

Jonathan Russell
240 Candlestick Road
North Andover, Massachusetts 01845

Jonathan Russell, Principal
Petrichor, Inc.
35 Manchester Road
Derry, New Hampshire 03038

Re:    **Violation of Your Contractual Obligations to Marlabs, Inc.**

Mr. Russell:

We represent Marlabs, Inc. ("Marlabs").  It has recently come to Marlabs' attention you have engaged in conduct in violation of Marlabs' Subcontractor Contractor Agreement with Petrichor, Inc., dated May 3, 2018 (hereafter "Agreement").  A copy of the Agreement is attached for your ready reference.  I suggest you consult with your legal counsel immediately and have him or her contact me directly to discuss these very serious issues.

In particular, Marlabs understands you are working for and/or joined Marlabs' end user Client, Merck KGaA, either directly or indirectly.  Please be advised such conduct directly violates the Agreement.  More specifically, the Agreement at Clause 5 includes the following narrow restrictive covenant:

During the terms of this Agreement and for a period of one (1) year after the date of termination, CONTRACTOR shall not provide or attempt to provide (or advise others of the opportunity to provide), directly or indirectly, any Services to the Client introduced by MARLABS. For the purposes of this Agreement, "Client" includes any entity for whom MARLABS and/or CONTRACTOR provides or seeks to provide Services consequent to this Agreement, and any other entity that Marlabs introduces CONTRACTOR to in an effort to provide services under this agreement. Further, where MARLABS is subcontracting work from another contractor, client also includes the end client, and any and all intermediary entities in between.

Your actions likewise violate Clause 1 of your Confidentiality and Non-Compete Agreement with Marlabs, annexed as Exhibit B to the attached Agreement.  Simply stated, you are restricted from working with Merck KGaA or any other Marlabs Client within twelve (12) months following your termination of assignment with Marlabs as that directly violates the non-competition clause of the Agreement.  This breach adversely affects Marlabs' good will and interferes with Marlabs' legitimate business interests.

In an effort to begin remedying the damage already caused by your potential breach of the contractual obligations owed to Marlabs, you have until noon on **Friday, September 6, 2019**

**BY EMAIL & OVERNIGHT DELIVERY**

Jonathan Russell
September 3, 2019

to affirm to Marlabs in writing you will cease and desist from working with Merck KGaA and will resolve this issue. To do so, please contact Mr. Partha Sarathy at 732-694-1000, Extn. 1610 or email him at Partha.Sarathy@marlabs.com. If you prefer, you may contact me at 973.646.7305 or msaloman@fordharrison.com.

Unless we receive immediate assurances you will strictly adhere to your obligations under the law, we will file an action against you seeking, among other things, injunctive relief to protect and enforce Marlabs' rights.  Besides injunctive relief, Marlabs may seek all damages and costs resulting from your unlawful conduct, including recovery of all attorneys' fees expended in protecting Marlabs' legitimate business interests.

The foregoing is not intended as a waiver, compromise, or an offer of settlement, and is sent without prejudice to any rights, remedies, defenses or future claims of Marlabs in connection with this matter, all of which are expressly reserved.  Further, nothing in this letter shall be deemed to waive or modify any term of the Agreement.

Very truly yours,

FORD & HARRISON LLP

MARK A. SALOMAN
Partner

MAS/mmi

Enclosure

cc:     Partha Sarathy, Associate General Counsel

WSACTIVELLP:10782288.1